# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

APPLIED ENERGY TECHNOLOGIES, INC.,

    Plaintiff,

v.                                    Case No. 09-CV-11959-DT

SOLAR LIBERTY ENERGY SYSTEMS, INC.,

    Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SOLAR LIBERTY ENERGY SYSTEMS, INC.'S MOTION TO DISMISS

Pending before the court is a motion to dismiss or, in the alternative, to transfer to the Western District of New York, filed on July 13, 2009 by Defendant Solar Liberty Energy Systems, Inc. The motion has been fully briefed and the court, pursuant to Local Rule 7.1(e), determines that a hearing is not required. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the court will grant the motion to transfer venue to New York and deny the motion to dismiss.

### I. BACKGROUND[1]

Plaintiff Applied Energy Technologies, Inc. ("AET"), a Michigan company, is a start-up engineering company that is in the business of, among other things, designing and manufacturing "racking systems" to support solar panels that are used to provide electricity at homes, business, and other locations. (Compl. ¶ 2.) AET maintains most of its operations in the metropolitan Detroit area. (*Id.* ¶ 3.) AET plans to expand its

---

[1]The relevant background facts are taken from Plaintiff's May 21, 2009 complaint and are accepted as true for purposes of this motion.

operations and employ currently unemployed automotive workers in the renewable energy industry, including employing people in the areas of engineering, human resources, sales, purchasing, and administrative functions. (*Id.* ¶ 4.) AET has purchased manufacturing equipment and will be manufacturing its solar panel racking system in Michigan. (*Id.*)

Defendant Solar Liberty Energy Systems, Inc. ("Solar Liberty"), a New York company, is a distributor and installer of renewable energy technologies, including solar panels for use on buildings. (Compl. ¶ 5.)

This lawsuit arises out of a "Confidentiality and Non-Disclosure Agreement" (the "NDA") entered into by Solar Liberty and Latitude Energy Structures, LLC ("Latitude") in late November/early December of 2008. (*See* Compl. Ex. A.) Sometime after the NDA was executed, Latitude bankruptcy, and all of its rights and benefits in the NDA that were owned by Latitude were assigned to AET. (*Id.* at ¶ 24.)

The complaint sets forth the details of the creation of the NDA as follows. On November 17, 2008, Aaron Faust and Adam Harris, then employees of Latitude made a sales visit to Solar Liberty to see if there was an opportunity for Latitude to design and sell products to Solar Liberty. (*Id.* ¶ 12.) At the November 17, 2008 meeting, Solar Liberty expressed an interest for Latitude to design and supply a generic ballasted racking system that would hold solar panels on the roof of a building. (*Id.*) Also at the meeting, and in a November 19, 2008 telephone call, Solar Liberty set general specifications and design goals that Latitude would need to achieve in designing a ballasted solar panel racking system. (*Id.* ¶ 13.) It was up to Latitude to design a product that met Solar Liberty's specifications and was acceptable to Solar Liberty. (*Id.*)

2

After the November 17, 2008 meeting, Latitude assigned its engineers John Harberts and John Klinkman to design a generic ballasted solar panel racking system that met Solar Liberty's specifications.[2] (*Id.* ¶ 14.) Mr. Harberts and Mr. Klinkman conceived and created designs for solar panel racking systems. (*Id.* ¶ 16.) In order to keep ownership of its proprietary designs for the ballasted solar panel racking systems, Latitude requested that Solar Liberty sign its standard "Confidentiality and Non-Disclosure Agreement." (*Id.* ¶ 17.) Both Solar Liberty and Latitude signed the NDA. (*Id.* ¶ 18.) The Complaint attaches the NDA as Exhibit A and alleges that it contains a complete and accurate copy of the NDA signed by Solar Liberty and Latitude. (*Id.*)

On December 13, 2008, Latitude presented four different design concepts for ballasted solar panel racking systems that were conceived by John Harberts and John Klinkman to Solar Liberty. (*Id.* ¶ 19.) Solar Liberty expressed interest in one of the design concepts, and, based on the Solar Liberty's interest, Latitude then created a prototype of the design. (*Id.*)

On February 10, 2009, Solar Liberty's employee Nathan Rizzo visited Latitude in Port Huron, Michigan to view Latitude's prototypes, product packaging, and Latitude's manufacturing facility. (*Id.* ¶ 20.) Three days later, on or about February 13, 2009, Latitude went out of business and/or filed for bankruptcy due to the general state of the automotive industry in which it was involved. (*Id.* ¶ 21.)

---

[2]Mr. Harberts and Mr. Klinkman are accomplished engineers who have been named inventors on at least fifteen issued patents, including U.S. Patent Nos. 7,441,679; 7,497,651; 7,431,485; 7,156,593; 7,040,849; D533,130; D538,136; D552529; D508,889; D509,471; 6,135,472; 7,458,490; 7,377,674; 6,761,295; and D574,096. (Compl. ¶ 15.)

On February 17, 2009, former Latitude employees John Harberts, Aaron Faust, and John Klinkman visited Solar Liberty and informed it of their plan to form a new company to continue to manufacture and sell the designs developed by John Harberts and John Klinkman. (*Id.* ¶ 22.) Solar Liberty indicated that it might be interested in becoming an investor in the new company being proposed and requested that Harberts, Faust, and Klinkman submit a proposal. (*Id.*) However, on February 23, 2009, Solar Liberty's president, Adam Rizzo, telephoned Aaron Faust and stated Solar Liberty could not become an investor in the proposed new company because it was having financial issues. (*Id.* ¶ 23.)

On March 17, 2009, AET was formed. (*Id.* ¶ 24.) All rights and ownership in the former Latitude designs and inventions for the solar panel racking systems have been assigned to AET, and all rights and benefits in the NDA that were owned by Latitude have been assigned to AET. (*Id.*)

On or about March 17, 2009, a telephone conference occurred between AET employee Aaron Faust and Solar Liberty's employee Nathan Rizzo. (*Id.* ¶ 25.) On the telephone call, Nathan Rizzo said that Solar Liberty would not use AET as a supplier of solar panel racking systems. (*Id.*) Nathan Rizzo said that Solar Liberty had decided to use a solar panel racking system designed and manufactured by a different supplier. In response, Mr. Faust said that AET was moving forward with purchasing manufacturing equipment to produce its racking system and that AET would be offering the racking system for sale to third parties.[3] (*Id.*) Plagory

---

[3] AET contends that it has invested approximately $400,000 in manufacturing equipment and other expenses to produce its solar panel racking system. (Compl. ¶

4

On March 17, 2009, Solar Liberty's President sent two emails to AET stating that Solar Liberty provided proprietary information to Latitude and that if AET disclosed Solar Liberty's proprietary information, then Solar Liberty would file a lawsuit to enforce the NDA and seek damages and injunctive relief. (*Id.* ¶ 26.) On April 24, 2009, AET's attorney faxed a response letter to Solar Liberty, stating that AET did not believe that it had used any of Solar Liberty's proprietary information in the design of the solar panel racking system it would be offering for sale. (*Id.* ¶ 27.) AET's attorney requested that Solar Liberty identify what it considered to be its proprietary information so that AET did not inadvertently use or disclose the information. AET's attorneys requested that Solar Liberty respond to its letter within two weeks time or it would consider the matter closed. (*Id.*)

Over two weeks later, between May 11, 2009 and May 16, 2009, AET and Solar Liberty attended the American Solar Energy Society's National Solar Conference ("ASES Conference"). (*Id.* ¶ 28.) At the conference and tradeshow, AET displayed its solar panel racking system in a display booth. (*Id.*) At the ASES Conference, on or about May 15, 2009, while AET's Vice President of Sales was talking to a prospective customer, Solar Liberty's President, Mr. Rizzo, approached the potential customer and told the prospective customer not talk to AET because AET stole Solar Liberty's proprietary design. (*Id.* ¶ 29.) Mr. Rizzo intentionally made the accusations so that the potential customer would not purchase AET's solar panel racking system. (*Id.*) AET

---

35.)

contends that Solar Liberty communicated to other third parties at the ASES Conference that AET had stolen Solar Liberty's proprietary designs. (*Id.* ¶ 30.)

On May 15, 2009, Solar Liberty's attorney sent a letter in response to the letter sent by AET's attorneys on April 24, 2009. (*Id.* ¶ 31.) Solar Liberty's President also hand-delivered a copy of the letter to AET at AET's display booth at the ASES Conference. (*Id.*) In this letter, Solar Liberty accused AET of violating the NDA by misappropriating and/or disclosing the Solar Liberty's proprietary designs in AET's solar panel racking system. (*Id.*) The letter demanded that "AET IMMEDIATELY CEASE AND DESIST from any and all further dissemination and disclosure of Solar Liberty's proprietary solar panel roof ballast design rack, including, but not limited to, its immediate removal of any such material from the American Solar Energy Society's National Solar Conference . . . ." (*Id.*) While delivering the letter, Mr. Rizzo said that AET stole Solar Liberty's proprietary designs and that he was going to sue AET, John Harberts, and Aaron Faust if AET did not stop offering its solar panel racking system for sale. (*Id.*)

On May 16, 2009, Rizzo came to Solar Liberty's display booth on at least two separate occasions. (*Id.* ¶ 32.) According to AET, Rizzo yelled that AET had stolen Solar Liberty's proprietary designs. (*Id.*) Rizzo also yelled, again, that Solar Liberty was going to sue AET, and Aaron Faust and John Harberts, personally. (*Id.*) AET contends that Rizzo intentionally yelled his accusations and threats in such a manner so that all of the potential customers viewing AET's display would hear his accusations and would not purchase AET's solar panel racking system. (*Id.*)

AET asked Rizzo to leave the AET display booth and stop defaming AET in front of its potential customers.[4] (*Id.* ¶ 33.) AET asserts that Solar Liberty's defamatory accusations at the ASES Conference were so belligerent and disruptive that AET requested the organizers of the ASES Conference to monitor AET's display booth. (*Id.* ¶ 34.) The ASES Conference organizers ordered Rizzo to stay away from AET's display booth and warned him that if he did not, he would be escorted out of ASES Conference. (*Id.*)

Less than a week later, on May 21, 2009, AET initiated the instant litigation, asserting two counts against Solar Liberty. In the first count, AET seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that is has not violated the NDA and may continue to sell the AET solar panel racking system. (Compl. ¶¶ 36-40.) In the second count, AET asserts a defamation claim based on Solar Liberty's alleged statements that AET stole Solar Liberty's proprietary designs. (*Id.* ¶¶ 41-45.)

## II. STANDARD

Because federal subject matter jurisdiction in this case is based solely on diversity of citizenship under 28 U.S.C. § 1332, venue is governed by 28 U.S.C. § 1391(a). "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant is subject to personal jurisdiction at the

---

[4]AET employee John Harberts took a photograph of Rizzo at AET's display booth as evidence. (Compl. ¶ 33.)

time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This provision is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "A district court 'has broad discretion to grant or deny a motion to transfer [a] case.'" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (citing *Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986)).

### III. DISCUSSION

After being served with the complaint, Solar Liberty filed a motion to dismiss or to transfer venue based on a forum selection clause in the NDA. Section 4 of the NDA provides:

> This Agreement shall be governed by and be construed and take effect in all respects in accordance with the laws of the State of Michigan, notwithstanding any choice of law provisions. *The party wishing to bring an action under this Agreement, shall bring it in the home jurisdiction of the other party and shall agree to jurisdiction and venue as to all related causes of action arising under the Agreement.*

(*Id.* (emphasis added).) Solar Liberty contends that, under the NDA, since AET initiated this action, it should have filed the action in the Western District of New York, Solar

8

Liberty's home jurisdiction.[5] Solar Liberty argues that this action should therefore either be dismissed or transferred to the Western District of New York.

### A. Dismissal

As an initial matter, the court finds that the facts of this case do not justify a dismissal for improper venue. Although the Sixth Circuit, in some circumstances, will allow a dismissal under Federal Rule of Civil Procedure 12(b)(6) based on a forum selection clause, *see Langley v. Prudential Mortgage Capital Comp., L.L.C.*, 546 F.3d 365, 369 (6th Cir. 2008), Solar Liberty has not shown that dismissal, rather than transfer, is appropriate under the circumstances of this case.

In its motion, Solar Liberty devotes three paragraphs to its dismissal argument, and the bulk of those paragraphs simply cite to general case law stating that forum selection clauses are enforceable. In its reply brief, Solar Liberty argues that dismissal is proper because AET allegedly engaged in some "procedural fencing" activities in its race with Solar Liberty to be the first to file this lawsuit. The court is not persuaded that these activities, even if true, justify a dismissal. If this action were brought *solely* on the basis of the NDA, then *perhaps*, with the NDA's forum selection clause, and if supported with additional case law and argument, the court would entertain the option of a

---

[5]In its reply brief, Solar Liberty argues that the NDA may not be applicable to AET at all, as there is some question as to whether Latitude could properly assign its interests and obligations under that contract. Because this issue was raised for the first time in the reply, the court will not consider it in making its analysis. Nonetheless, the court notes that even if the NDA was not properly assigned to AET, the court's conclusion to transfer venue would remain unchanged. If the NDA was not properly assigned to AET, then the only valid claim before the court would be the defamation claim, which arose in New York and is asserted against a New York defendant. Under this scenario, transfer of venue would be proper under § 1404.

dismissal under Rule 12(b)(6). However, inasmuch as Solar Liberty's motion itself focuses on the transfer option and because this lawsuit also contains a defamation claim, the court will instead analyze this motion under 28 U.S.C. § 1404.

### B. Transfer

To transfer an action under § 1404(a) the following three requirements must be met: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). Factors to consider in determining whether to transfer venue include:

(1) convenience of witnesses;
(2) the location of relevant documents and relative ease of access to sources of proof;
(3) the convenience of the parties;
(4) the locus of the operative facts;
(5) the availability of process to compel the attendance of unwilling witnesses;
(6) the relative means of the parties;
(7) the forum's familiarity with the governing law;
(8) the weight accorded the plaintiff's choice of forum; and
(9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).

Finally, where a valid forum-selection clause was entered into by the parties, it should ordinarily be given controlling weight. *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 218 (E.D. Mich. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). "[S]uch clauses are now deemed to be '*prima facie* valid' and

are to be enforced 'unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Id.* at 217 (citing *Moses v. Bus. Card Express, Inc.* 929 F.2d 1131, 1136 (6th Cir. 1991)). The practical effect of a forum-selection clause is that it shifts to the plaintiff the burden of showing that a transfer to the proposed venue would be inconvenient. *See U.S. v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806-07 (E.D. Mich. 2000); *see also Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002). Despite a strong preference to consider forum-selection clauses valid, such clauses are only one factor in the court's venue analysis and are not dispositive. *Steward,* 487 U.S. at 23; *MCNIC Oil & Gas v. Ibex Resources Co.*, 23 F. Supp. 2d 729, 738 (E.D. Mich. 1998).

The first step in the analysis in determining whether to grant a motion to transfer venue is to determine whether venue would have been proper had the action been originally filed in the transferee forum. 28 U.S.C. § 1404(a). Here, venue would have been proper if filed in the Western District of New York. Solar Liberty, as a New York corporation with its principal place of business in New York, "resides" in New York and, additionally, the alleged facts giving rise to AET's defamation claim occurred in New York. Accordingly, under 28 U.S.C. § 1391(a)(1) and (2), venue would have been proper if this case had been initially filed in New York. The court now turns to the analysis of the relevant factors in determining whether to transfer venue.

### 1. Convenience of the Parties & Witnesses

The convenience of the witnesses is one of the most important factors in considering a motion to transfer venue. 15 Wright, Miller & Cooper, *Federal Practice*

and Procedure, § 3851 at 415 (2d Ed. 1986); see also Thomas v. Home Depot, U.S.A., Inc., 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001). In this case, with respect to the first claim, the witnesses appear to be evenly split between New York and Michigan. The first claim will revolve around the interpretation and enforcement of the NDA and the relevant witnesses will likely be former employees of Latitude as well as employees of Solar Liberty. AET's second claim, for defamation, arose out of events occurring in New York. While AET claims that two relevant witnesses are two of its Michigan employees, Solar Liberty accurately counters that non-party New York witnesses will also likely be witnesses with respect to this claim. The court thus concludes that this factor is evenly split, with the convenience of the witnesses and parties evenly balanced between Michigan and New York.

### 2. Availability of Process To Compel Attendance of Witnesses

Another factor in considering whether to transfer venue under § 1404 is the availability of process to compel the attendance of unwilling witnesses. *Overland,* 79 F. Supp. 2d at 811. As discussed above, the non-party witnesses from Latitude are located in Michigan and non-party witnesses from the ASES Conference are located in New York. Accordingly, this factor is also evenly split between Michigan and New York.

### 3. Location of Relevant Documents and Access to Proof

This factor does not favor one venue over the other. The witnesses, as discussed, are split between the venues and access to documents is a less significant factor in this "era of photocopying, fax machines, and Federal Express." *Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997). Further, depositions of the witnesses

are likely to be conducted where the witnesses are located, regardless of venue. Thus, this factor does not favor either party.

### 4. Locus of Operative Facts

The locus of operative facts slightly favors venue in New York. While the facts surrounding the NDA creation and possible breach are split between New York and Michigan, the facts giving rise to the defamation claim arose in New York. Thus, this factor tips slightly in favor of a New York venue.

### 5. Relative Means of the Parties

AET has submitted an affidavit stating that litigating this action in New York would impose a substantial financial hardship on AET, which is a small start-up company with only five employees. (Pl.'s Resp. Ex. D.) AET, however, provides no explanation as to how litigating the action in New York would impose a substantially greater hardship than litigating the action in Michigan. Further, Solar Liberty argues that, had AET been more concerned with costs, it would not have undertaken an alleged settlement "ruse"[6] in order to file this action first but would have instead genuinely explored settlement as Solar Liberty attests it was willing to do. (Def.'s Reply at 2, 5-6.) The court is inclined to find that if costs were such a high concern to AET it would not have filed this lawsuit as quickly as it did, less than a week after the ASES Conference, but would have instead explored further discussions or, perhaps, waited

---

[6]Solar Liberty contends that AET scheduled a conference call to be held on May 21, 2009 to discuss the parties' differences and "sort this out." (Def.'s Reply at 2.) Just prior to the conference call, however, and without prior notice to Solar Liberty, AET initiated this action. (*Id.*)

until Solar Liberty filed an action, which would have been required to have been filed in AET's home venue. Nonetheless, AET has presented an affidavit stating that a New York litigation would impose a hardship on it as a small company and the court recognizes that, indeed, out-of-state litigations result in greater costs than in-state litigations. Accordingly, the court finds that this factor weighs slightly in favor of AET's chosen forum.

### 6. Forum's Familiarity with the Law

The forum's familiarity with the governing law is again split between the parties. Whichever federal court presides over this action will apply the same relevant state law. However, it is likely that this court is more familiar with Michigan law and the New York federal court is more familiar with New York law. *See Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992) ("It is axiomatic that the construction of state law is best given to a court most familiar with it."). The declaratory action count will likely be governed, in accordance with the choice of law provision, under Michigan law, but the defamation action will likely be governed by New York law, inasmuch as New York is where the alleged defamation occurred. This factor does not weigh in favor of either party.

### 7. Weight Accorded Plaintiff's Choice of Forum and the Interests of Justice[7]

---

[7] The court is not persuaded that the factor of trial efficiency favors one party over the other. The court agrees with Solar Liberty that the Eastern District of Michigan and the Western District of New York are equally equipped to efficiently preside over this action.

14

With all of the foregoing factors generally balanced between the parties, the court considers the weight given to AET's choice of forum and the overall interests of justice. In light of the forum selection clause, the court finds these factors weigh strongly in favor of a transfer to New York. The NDA provides that "[t]he party wishing to bring an action under this Agreement, shall bring it in the home jurisdiction of the other party and shall agree to jurisdiction and venue as to all related causes of action arising under the Agreement." (NDA § 4.) From the plain language of this forum selection clause, any party initiating an action arising under the NDA shall bring the action, and any related causes of the action, in the opposing party's home forum. Applied to the facts of this case, AET filed a complaint seeking (1) a declaration that it is not in breach of the NDA and (2) damages for a defamation claim relating to rights AET may or may not have had under the NDA. When this complaint was filed, AET should have filed its complaint in Solar Liberty's home venue of the Western District of New York.

AET attempts to avoid the implications of the NDA in two creative, yet unavailing, ways. AET first argues that this "defensive declaratory judgment suit should be interpreted from the perspective of the natural plaintiff." (Pl.'s Resp. at 7.) AET argues that although it is technically the plaintiff in this action, in effect it is the natural defendant as it seeks to simply defend itself from Solar Liberty's assertions that AET is in breach of the NDA. Thus, AET argues that the court should realign the parties, as it sometimes does in patent cases, to reflect that Solar Liberty is the natural plaintiff and AET is the natural defendant. AET contends that if the NDA's forum selection clause is viewed after realigning the parties, then the action is properly maintained in Michigan, the home venue of that natural defendant. The court disagrees.

First, the court typically realigns parties only in patent cases, and even then the court usually requires the consent of both parties. The court would also make clear in any realignment that the realignment does not affect any rights or obligations a party would otherwise have had. Moreover, the court would not realign the parties where, as here, there has been no answer filed and thus, at this point, all the causes of action are asserted *by* AET and *against* Solar Liberty. If there is as yet no counterclaim, then there is no reason to realign the parties. Further, the declaratory action count is not the sole count of the complaint, and it would make little sense to realign the parties where AET also asserts a defamation count against Solar Liberty. Finally, even if the court were persuaded that realignment was proper, it would not affect the plain language of the NDA's forum selection clause, which requires the party filing suit to file it in the opposing party's venue. It is the alignment of the parties at the time of filing that is relevant, not the alignment of the parties after a court may find it efficient to realign them to their "natural" states.

Relatedly, the court is also not persuaded by AET's second argument, that AET's declaratory judgment action does not qualify as an "action" under the language of the NDA. Specifically, AET contends that the term "action" does not apply to its count under the Declaratory Judgment Act, but should apply only to substantive actions for breach of contract. (Pl.'s Resp. at 10-11.) AET states that it is Solar Liberty, the "natural plaintiff," who is asserting a cause of action against AET, and AET is simply defending itself by filing a declaratory judgment claim. Thus, AET contends that the proper interpretation of the NDA requires that its declaratory judgment claim was properly filed in Michigan.

16

While AET's counsel presents an inventive argument, it is nonetheless unavailing. The language of the forum selection clause does not, on its face, except declaratory judgment claims from its scope. Rather, it applies to any "action" brought "under this Agreement" and applies also to "all related causes of action arising under the Agreement." (NDA§ 4.) The court agrees with Solar Liberty that AET has failed to cite any case for the remarkable proposition that a declaratory judgment action is not an "action" as that term is generally known. If, as AET suggests, the parties wanted to limit the forum selection clause to actions for breach of contract, the parties could easily have drafted the NDA to provide that any claims for breach of contract will be brought in the alleged breaching party's home forum. The parties did not do so. Under the NDA as drafted, *any* cause of action which generally arises under the NDA should have been brought in the Defendant's home forum. Here, AET asserts an action against Solar Liberty which clearly arises under the NDA. Accordingly, the action should have been filed in New York.

Because this forum selection clause is presumed valid, the court finds that granting deference to AET's choice in this case would permit it to escape the terms of an accepted forum selection clause and instead sanction a "race to the courthouse" in contravention of an agreed-upon contractual forum. Although a plaintiff's choice of forum is typically entitled to deference, *Thomas v. Home Depot*, U.S.A., Inc., 131 F. Supp. 2d 934, 937 (E.D. Mich. 2001), the fact that AET chose to file this lawsuit in Michigan will not prevent a transfer under these circumstances. *See Detroit Coke Corp.*, 794 F. Supp. at 219 (finding that the plaintiff "made [his] 'choice' of forum when [he] signed the Agreement which contained the forum selection clause").

17

Likewise, the interests of justice favor the enforcement of valid forum selection clauses. It is settled law that forum selection clauses are to be read as "prima facie valid," and are enforceable in federal courts. *Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972). In the instant case, no exceptional circumstances are present that would lead the court to determine the provision is unenforceable. As such, for purposes of this motion, the court finds that this contractual provision is a valid forum selection clause requiring venue in New York.

While forum selection clauses are not dispositive for determining venue, the Supreme Court has stated that "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus. The flexible and individualized analysis Congress prescribed in § 1404(a) thus encompasses consideration of the parties' private expression of their venue preferences." *Stewart*, 487 U.S. at 29-30. Applying this standard to this case, the forum selection clause in favor of New York should be given significant weight. Indeed, where all the other factors are evenly balanced, the strength of this final factor, in effect, controls. For these reasons, the court finds that a balancing of the relevant factors ultimately tips in favor of a transfer to New York and Solar Liberty's motion seeking the transfer will be granted.

### IV. CONCLUSION

IT IS ORDERED that Defendant's July 13, 2009 motion to dismiss or to transfer venue [Dkt. # 5] is GRANTED IN PART and DENIED IN PART. Defendant's request for a dismissal is DENIED, but its request for a transfer of venue is GRANTED.

IT IS FURTHER ORDERED that the clerk of the court is directed to TRANSFER the above-captioned matter to the United States District Court for the Western District of New York.

      s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated: August 27, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 27, 2009, by electronic and/or ordinary mail.

      s/Lisa Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\09-11959.APPLIEDENERGY.MotionDismissVenue.ForumSelection.chd.wpd